## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY ROEBUCK,** | | **CIVIL ACTION** |
| **Plaintiff,** | | |
| **v.** | | |
| **OFFICER STANLEY DAVIS, JR., Badge No. 9660,** | | **NO. 19-2816** |
| **OFFICER RAMOS, Badge No. 394, OFFICER MYERS, Badge No. 2103, and SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, also known as "SEPTA,"** | | |
| **Defendants.** | | |

**DuBois, J.**                                                                                    **February 10, 2020**

## M E M O R A N D U M

### I.        INTRODUCTION

This is a civil rights case arising out of the January 20, 2017 arrest of plaintiff Anthony Roebuck. Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights and state tort claims against multiple individual officers of the Philadelphia Police Department and Southeastern Pennsylvania Transportation Authority ("SEPTA") Transit Police Department. Plaintiff also asserts a *Monell* claim against defendant SEPTA under § 1983 for violation of his Fourth and Fourteenth Amendment rights.

Presently before the Court is defendants SEPTA and SEPTA Police Officer Ramos's motion to dismiss for failure to state a claim. For the reasons that follow, the Court grants the motion and dismisses the claims against SEPTA Police Officer Ramos and SEPTA without prejudice to plaintiff's right to file a second amended complaint within twenty days if warranted by the facts and applicable law.

## II.     BACKGROUND

The facts below are drawn from plaintiff's Amended Complaint.  The Court construes that complaint in the light most favorable to the plaintiff, as it must in ruling on a motion to dismiss.  The facts set forth in the Amended Complaint may be summarized as follows:

On January 20, 2017, plaintiff was visited by two federal probation officers at his home, located at 3938 Alfred Street, Philadelphia, Pennsylvania.  Am. Compl. ¶ 20–21.  Plaintiff avers that the probation officers searched his home during the visit.  *Id.* ¶ 31.  What, if anything, was found during this search is not disclosed in the Amended Complaint.

After the probation officers left, plaintiff left his home to pick up his children from school.  *Id.* ¶ 21.  While driving to the school, plaintiff was stopped by three non-party Philadelphia Police officers, who ordered him to exit his car while pointing their firearms at him. *Id.* ¶ 22.  Plaintiff was handcuffed and transported in a patrol car back to his home, where, upon plaintiff's arrival, the "[d]efendant [o]fficers"—Philadelphia Police Officers Stanley Davis, Jr. and Charles Myers, and SEPTA Police Officer Ramos— kicked in his door and entered the house.  *Id.* ¶ 8, 23–24.  Officer Davis asked plaintiff if he "want[ed] to help himself out 'just like the guy who set [him] up.'"  *Id.* ¶ 26.  Plaintiff expressed confusion in response.  *Id.* ¶ 27. Officer Davis then threatened plaintiff, calling him a "dumb fuck" and stating that "[I] should crack [his] head.  [He] is about to do twenty years."  *Id.* ¶ 27–28.  Plaintiff alleges that he later heard Officer Davis "say that he must get a search warrant because he 'did not have one for what the [d]efendant [o]fficers did."  *Id.* ¶ 29.  At one point later during the encounter, neighbors approached the defendant officers to speak to them, and Officer Davis responded, "[S]hut up, we're the Feds."  *Id.* ¶ 30.

According to the Amended Complaint, the defendant officers claimed they found drugs

and "other evidence" in plaintiff's kitchen, despite the fact that federal probation officers had already searched the home earlier that day. *Id.* ¶ 31. Plaintiff alleges that the defendant officers also confiscated $12,000 in cash from his house, but that they did not properly document the seizure and later divided the cash amongst themselves. *Id.* ¶¶ 35–36. In addition, plaintiff asserts, *inter alia*, that the defendant officers falsified their search warrant, submitted "police paperwork misrepresenting the events that led to [his] . . . arrest," and failed to disclose exculpatory evidence. *Id.* ¶¶ 37–42.

Plaintiff was later charged with multiple drug-related offenses, but the District Attorney's Office *nolle prossed* the charges on July 5, 2017. *Id.* ¶¶ 45, 47. Plaintiff avers that the defendant officers' actions and purportedly false allegations that led to his arrest and criminal charges were "part of a scheme to steal [his] cash." *Id.* ¶ 44.

Plaintiff proceeded to file two civil rights lawsuits related to his January 20, 2017 arrest. In the first case, *Anthony Roebuck v. Edward Slater, Jr., et al*, No. 19-278, filed on January 18, 2019, plaintiff asserted claims against the following defendants: Officers Stanley Davis, Jr. (Badge No. 9660), Edward Slater, Jr. (Badge No. 3687), Cullen (Badge No. 7196), Domico (Badge No. 4522), Holmes (Badge No. 2135), Myers (Badge No. 2103), Ramos (Badge No. 394), Ruth (Badge No. 1295), and John Does #1-10; Sergeant Robert Friel (Badge No. 578); and the City of Philadelphia. After failing to effect service on Officers Davis, Myers, and Ramos, plaintiff voluntarily dismissed the claims against those defendants. *See* Ct. Order dated May 31, 2019 (Document No. 11).

On June 27, 2019 plaintiff filed a Complaint against defendant Officers Davis, Myers, and Ramos in this case and subsequently filed an Amended Complaint on September 24, 2019 that included SEPTA as a defendant. The Amended Complaint asserts the following claims: violations of the Fourth and Fourteenth Amendments pursuant to § 1983 against defendant Philadelphia Police Officers Davis and Myers and SEPTA Police Officer Ramos (Count I); violations of the Fourth and Fourteenth Amendment pursuant to § 1983 against defendant SEPTA (Count II); and various state tort claims against the individual defendant officers (Count III).[1] Am. Compl. ¶¶ 58–69. On October 16, 2019, defendant Officer Myers filed an Answer to the Amended Complaint (Document No. 7) and defendants SEPTA Police Officer Ramos and SEPTA filed a motion to dismiss (Document No. 8).[2] Plaintiff responded to the motion on October 28, 2019 (Document No. 10). Defendants' motion is thus ripe for decision.

## III.    LEGAL STANDARD

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that

---

[1] Count I of the Amended Complaint alleges "Federal Civil Rights Violations" resulting from "all defendants' conduct, committed under color of state law," while Count II asserts "Federal Civil Rights Claims Against SEPTA." The Court construes Count I as a claim against only the individual defendant officers—Officers Davis, Myers, and Ramos.

[2] There is a pending motion for default judgment against defendant Officer Davis (Document No. 14, filed December 13, 2019).

constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Twombly*, 550 U.S. at 557, 564. Such conclusory allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Nevertheless, a court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## IV.    DISCUSSION

### A.    Claims Against SEPTA Police Officer Ramos

In Counts I and III of the Amended Complaint, plaintiff asserts claims against SEPTA Police Officer Ramos under both (1) § 1983 and (2) Pennsylvania state law prohibiting false arrest and false imprisonment, malicious prosecution, assault and battery, and conversion. Am. Compl. ¶¶ 58–61, 68–69. Defendants argue that the claims against SEPTA Police Officer Ramos should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to plead sufficient facts to state a plausible claim for relief. The Court agrees and dismisses the claims against SEPTA Police Officer Ramos.

The Court first addresses Count I. To state a claim under § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Because government officials cannot be found liable for a § 1983 violation under the theory of *respondeat superior*, "a plaintiff must plead that each Government-official defendant, through the official's own individual action, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In other words, a § 1983 lawsuit must allege personal involvement by the individual defendant. *See Diaz v. Canino*, 502 F. App'x 214, 219 (3d Cir. 2012).

Plaintiff has failed to make sufficiently specific averments about SEPTA Police Officer Ramos's personal involvement in the alleged constitutional violations. In describing the events of January 20, 2017, the Amended Complaint primarily refers only to the "[d]efendant [o]fficers"—a shorthand for Officers Davis, Myers, and Ramos.[3] *See* Am. Compl. ¶ 8. Although Officer Davis is individually named at various points in the facts section of the Amended Complaint, there are no specific factual allegations against SEPTA Police Officer Ramos. Ramos is not individually identified, nor does the Amended Complaint distinguish his individual conduct from that of the other defendant officers.

Complaints that rely solely on general references to defendants as a group do not satisfy the pleading requirements for a § 1983 claim. *See, e.g.*, *Falat v. Cty. of Hunterdon*, No. CIV.A. 12-6804 SRC, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013); *see also Aruanno v. Main*, 467 F. App'x 134, 137–38 (3d Cir. 2012). "When a number of different defendants are named in a complaint, plaintiff cannot refer to all defendants who occupied different positions and

---

[3] The Court notes, however, that at one point in the Amended Complaint plaintiff mistakenly refers to Officer Ruth, Officer Holmes, and Officer Slater as defendants in this case. *See* Am. Compl. ¶ 22. Those officers are defendants in *Anthony Roebuck v. Edward Slater, Jr., et al*, No. 19-278, not the instant case.

presumably had distinct roles in the alleged misconduct without specifying *which* [d]efendants engaged in what wrongful conduct." *Vaughn v. Geo Grp.,* No. CV1810148JMVSCM, 2018 WL 3056066, at *3 (D.N.J. June 20, 2018) (internal citations and quotation marks omitted); *see also Krebs v. New Kensington-Arnold Sch. Dist.*, No. CV 16-610, 2016 WL 6820402, at *8 (W.D. Pa. Nov. 17, 2016) (holding in a § 1983 case that "[w]ithout separately alleging the conduct of each [d]efendant, [d]efendants are not on notice of their conduct").  By merely lumping SEPTA Police Officer Ramos together with the other defendant officers from a separate municipal agency, plaintiff has failed to sufficiently state how Ramos violated his constitutional rights.  *See Lentz v. Taylor*, No. CV 17-4515 (RBK/JS), 2019 WL 1091392, at *12 (D.N.J. Mar. 8, 2019) (refusing to "impute generalized allegations onto specific [d]efendants").

For the same reasons, the Court holds that such generic references are also inadequate for plaintiff's state tort claims in Count III of the Amended Complaint.  *See, e.g.*, *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. 13-2052, 2014 WL 4675316, at *4 (D. Del. Sept. 19, 2014) (holding that "[t]hese kinds of allegations, specific to no [d]efendant and generic as to all, are unhelpful in further flushing out a facially plausible claim").

The Court thus dismisses Counts I and III against SEPTA Police Officer Ramos.  The dismissal is without prejudice on the ground that the Court does not find that amendment of plaintiff's claims against Ramos would be futile or inequitable.

## B.    *Monell* **Claim Against SEPTA**

The Court also concludes that plaintiff has failed to allege sufficient facts to state a plausible claim of municipal liability against SEPTA under § 1983.

Claims for § 1983 liability against a municipal agency such as SEPTA are governed by the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658

(1978).  *See also Bolden v. Se. Pennsylvania Trans. Auth.*, 953 F.2d 807, 821, 831 (3d Cir. 1991)

(en banc) (recognizing SEPTA's status as a municipal agency for the purposes of § 1983).  To

establish *Monell* liability, a plaintiff must demonstrate (1) a constitutional violation by a

municipal actor that (2) was caused by a municipal policy or custom.  *Monell*, 436 U.S. at 694;

*see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (noting the "two-path track"

to municipal liability premised on municipal policy or municipal custom).  A policy is

established when a decisionmaker with final authority "issues an official proclamation, policy, or

edict."  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing *Pembaur v.

City of Cincinnati*, 475 U.S. 469, 481 (1986)).  In contrast, a custom can be established by

showing that "a given course of conduct, although not specifically endorsed or authorized by

law, is so well-settled and permanent as virtually to constitute law."  *Bielevicz v. Dubinon*, 915

F.2d 845, 850 (3d Cir. 1990).

Plaintiff sets forth various theories for his *Monell* claim, alleging "patterns, practices and

customs" that involve, *inter alia*, "[u]nlawful detentions and unlawful arrests by police officers,"

"[t]he refusal of police officers to intervene when other officers violate the rights of citizens in

their presence," and the failure to train, supervise, discipline, and investigate.  Am. Compl.

¶¶ 63–67.  These averments—which are nearly identical to those in the Complaint filed in

*Anthony Roebuck v. Edward Slater, Jr., et al*, No. 19-278—are often redundant, overlapping, and

difficult to decipher.

The Court denies plaintiff's *Monell* count on two grounds.  First, plaintiff has not

adequately alleged that a SEPTA municipal employee caused the underlying constitutional

violation.  SEPTA is not mentioned once in the factual allegations of the Amended Complaint

and the only SEPTA official named is SEPTA Police Officer Ramos.  *See* Am. Compl. ¶¶ 7, 11–

57. As discussed *supra*, plaintiff has not sufficiently pled the involvement of Ramos—or any SEPTA official—in the alleged violations of plaintiff's constitutional rights on January 20, 2017.

Second, plaintiff has failed to sufficiently allege a SEPTA policy or custom. The Amended Complaint does not identify a specific "official proclamation, policy, or edict" by SEPTA. *See Andrews*, 895 F.2d at 1480. The Amended Complaint also does not contain factual allegations about SEPTA customs that are "so well-settled and permanent as to virtually constitute law." *Bielevicz*, 915 F.2d at 850. When alleging a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible . . . through acquiescence, for the custom." *Andrews*, 895 F.2d at 1480. In this case, the Amended Complaint fails to identify, even generically, a SEPTA decisionmaker who was aware of the various types of alleged misconduct and acquiesced to the purported custom. *See, e.g.*, *Rees v. Office of Children and Youth*, 473 F. App'x 139, 143 (3d Cir. 2012) (affirming dismissal because the "Complaint fail[ed] to link the alleged policies or customs to anyone . . . who had policy-making authority"). The *Monell* claim allegations are therefore deficient.

Plaintiff's allegations that SEPTA failed to train, supervise, discipline, and investigate, are particularly lacking. Plaintiffs who allege that "the policymaker has failed to act affirmatively at all" must show that "the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of the existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 409, (1997)); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). In cases in which the plaintiff alleges failure to train, supervise, discipline or investigate, a "pattern of similar

constitutional violations . . . is ordinarily necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Nevertheless, the Amended Complaint in this action contains factual allegations that relate to only one incident, plaintiff's January 20, 2017 encounter with the defendant officers. In the absence of such a pattern, the burden to show deliberate indifference is "high" because the plaintiff must show that "a violation of federal rights [was] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 265 (3d Cir. 2010) (internal citation and quotation marks omitted). Plaintiff has failed to make such a showing in this case.

The Court therefore dismisses plaintiff's claim against SEPTA. The dismissal is without prejudice on the ground that the Court does not find that amendment of plaintiff's Amended Complaint against SEPTA would be futile or inequitable.

## V.     CONCLUSION

For the foregoing reasons, the Court dismisses plaintiff's Amended Complaint against SEPTA Police Officer Ramos and SEPTA without prejudice to plaintiff's right to file a second amended complaint within twenty days if warranted by the facts and applicable law. An appropriate order follows.